JUDGE ENGELMAYER



ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAMON ESPINOSA and MAXINS SANTANA, on behalf of
themselves and on behalf of others similarly situated,

Plaintiff,

-against-

WHOLE FOODS MARKET GROUP, INC.,
WILLIAM RENNA, and CIRO ALFIERI

Defendants.
------------------------------------------------------------------------X

**COLLECTIVE
ACTION AND
CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**

Docket No.:

## COMPLAINT

1.      Plaintiffs Ramon Espinosa and Maxins Santana ("Plaintiffs"), on behalf of

themselves and on behalf of all others similarly situated, by their attorneys, Robert

Wisniewski P.C., as and for their Complaint against the Defendants Whole Foods Market

Group, Inc. ("Whole Foods" or the "Corporate Defendant"), William Renna ("Renna"),

and Ciro Alfieri ("Alfieri") ( Renna and Alfieri, collectively, the "Individual Defendants")

state as follows:

## NATURE OF THE ACTION

2.      Plaintiffs bring this action against Whole Foods, a corporation in the business of operating grocery stores and two managers of the Whole Foods Store located at 95 East Houston Street, New York, New York, on behalf of themselves and on behalf of all other similarly situated current and former employees of Whole Foods (**Exhibit 1**).

3.      Plaintiffs bring this action to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("FLSA"), and the various wage orders promulgated by the U.S. Department of Labor and codified in 29 C.F.R. § 552 et. seq., New York Labor Law Articles 6 and 19, and § 198-b, § 198-c and §193 ("New York Labor Law"), the New York state common law and various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143.

4.      Plaintiffs also seek an accounting, by an accountant of Plaintiffs' choosing, of the so-called Gainsharing program for the Whole Foods store located at  95 East Houston Street, New York, New York  and, to this end, Plaintiffs seek to compel Defendants to produce and turn over all books and records relating to the operation and management of the Gainsharing program in the 95 East Houston Street, New York, New York 10002 location for the period of January 1, 2005 to the present, no later than thirty (30) days after the filing of this Complaint.

5.      Renna was a Store Manager ("Store Team Leader")  of Whole Foods on 95 East Houston Street, New York, New York 10002 from approximately July 2009 until July 2011.

6.      Alfieri is currently a Store Team Leader of Whole Foods on 95 East Houston Street, New York, New York 10002 and has been since approximately July 2011.

7.      Plaintiffs and others similarly situated were employees of Whole Foods who regularly worked over 40 hours per week, but were not compensated properly for the hours worked and the overtime hours.

## PARTIES, JURISDICTION AND VENUE

8.      Plaintiff Espinosa, at all relevant times herein, was and still is a resident of the State of New York, County of New York.

9.      Plaintiff Santana, at all relevant times herein, was and still is a resident of the State of New York, County of New York.

10.      At all times herein, Whole Foods was and still is a foreign business corporation duly organized under, and existing by virtue of, the laws of the State of Delaware, but authorized to do business in the State of New York and having its principal place of business in the State of Texas.

11.      At all times herein, Defendant Whole Foods transacted and still transacts substantial business and derived and still derives substantial revenue from services rendered in the State of New York.

12.      Upon information and belief, Defendant Renna, at all relevant times herein, was and still is a resident of the State of New York, County of New York.

13.      Defendant Alfieri, at all relevant times, was and still is a resident of the State of New York, County of Suffolk.

-3-

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 29 U.S.C. § 217 (FLSA); 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

15.     The Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of said Defendants produce, sell or otherwise work on goods that have been moved in or produced for interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

16.     This Court has personal jurisdiction over the Individual Defendants and the Corporate Defendant in that they regularly transact business in New York.

17.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b).

**JURY DEMAND**

18.     Plaintiffs demand a trial by jury of all issues so triable in this action.

**FACTUAL BACKGROUND**

19.     Plaintiffs and others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the Fair Labor Standards Act, New York Labor Law, and/or the common law of the State of New York in respect to their work for Defendants.

20.     Defendant Whole Foods operates grocery stores throughout the United States. One such grocery store is located at 95 East Houston Street, New York, New York

10002.

21.    Defendant Renna was a Store Team Leader of Whole Foods on 95 East Houston Street, New York, New York from approximately July 2009 until approximately July 2011, when he left that store to become a Store Team Leader at the Whole Foods store in Tribeca.

22.    Defendant Alfieri is a Store Team Leader of Whole Foods on 95 East Houston Street, New York, New York and has held that position since approximately July 2011.

23.    Plaintiffs and others similarly situated entered into employment agreements with Defendants to provide labor and services as team members and other similar positions in exchange for a specific hourly wage for each hour worked.

24.    Plaintiff Espinosa's employment agreement with Whole Foods required Plaintiff Espinosa to perform services as a Grocery Service Team Member in the store on 95 East Houston Street in exchange for an hourly wage of approximately $11.15 an hour beginning in approximately May 2008.

25.    Plaintiff Espinosa was employed by Whole Foods as a Grocery Service Team Member from approximately May 2008 until November 11, 2010.

26.    Plaintiff Santana's employment agreement with Whole Foods required Plaintiff Santana to perform services as a Grocery Service Team Member in the store on 110 Bloomingdale Road  White Plains, NY 10605 in exchange for an hourly wage of approximately $8.50 an hour beginning in approximately 2005.

27.    Plaintiff Santana was employed by Whole Foods as a Grocery Service

Team Member in the White Plains store from approximately 2005 until approximately 2007, when he began working as a Grocery Service Team Member at the 95 East Houston Street, New York, New York 10002 location. Plaintiff Santana remained at this Whole Foods location until his termination on September 29, 2011.

28.     As a Grocery Service Team Members, Plaintiffs' duties included stocking the shelves, setting up and taking down store displays and breaking down pallets of groceries after they were delivered to the store.

29.     Upon information and belief, the Individual Defendants supervised all of the employees in the Whole Foods Store on 95 E. Houston Street,  including Plaintiffs, during their respective time as Store Team Leader.

30.     Upon information and belief, the Individual Defendants, as Store Team Leaders,  approved all Team Member schedules.

31.     According to Whole Foods policy, the Individual Defendants had the authority to promote Team Members for excellent service. Part of a  promotion includes setting new wages for the employee.

32.     At all times relevant herein, the Individual Defendants have acted for and on behalf of Defendant Whole Foods  with the power and authority vested in them as Store Team Leaders of Whole Foods, and have acted in the course and scope of their duties and functions as employees and Store Team Leaders of Whole Foods.

33.     As a matter of economic reality, all Defendants are joint employers of Plaintiff and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

*Facts Regarding Defendants Wage Violations*

34.     In approximately October 2010, Plaintiff Espinosa began working overnight shifts, which were, as per the Whole Foods Employee Handbook, supposed to pay a higher wage rate of $12.65 an hour. However, Plaintiff Espinosa did not receive this higher rate but was paid his previous day wage of $11.15 an hour.

35.     Plaintiff Santana would also work overnight shifts approximately once every two months and was not always paid the proper night rates.

36.     Plaintiff Espinosa complained to Renna several times during the months of October and November 2010 about not being paid the proper rate of pay. Despite assurances from Renna that the pay rate would be fixed, Plaintiff Espinosa was not paid the proper night wage rate except for the last pay period before he was terminated.

37.     Upon information and belief, other employees of Defendants have not been paid the proper higher wage rate for overnight shifts.

38.     For at least one pay period in approximately the end of September 2010, Plaintiff Espinosa worked in excess of 40 hours per week but was not paid the proper overtime rate under Federal and New York State law.

39.     Plaintiff Espinosa complained to Defendant Renna on multiple occasions that he had not been paid proper overtime wages, but his complaints went unanswered.

40.     Upon information and belief, Defendants' other employees in the Whole Foods store at 95 East Houston Street have not been paid the proper overtime rate of 150% of their regular hourly rate for any hours worked in excess of 40 per week.

41.     Whole Foods located at 95 East Houston Street has annual employee team building days where employees of each department gather offsite to engage in team

building activities, games and lunch out. Employees of Whole Foods are supposed to be paid their regular salary for the hours they spend team building, as well as $35 for costs and expenses.

42.     Plaintiffs participated in team building days during their employment with Whole Foods. For the team building in approximately September 2010, Defendant Renna refused to pay participating employees, including Plaintiffs, the $35 to cover their costs and expenses.

43.     In addition, Plaintiff Santana was not paid for his travel time and expenses when he was asked by Whole Foods to leave work and travel to another Whole Foods store approximately 2 times per year, even though Whole Foods has a policy of compensating its employees for such travel time and expenses.

44.     Plaintiffs and all of Defendants' other employees in the Whole Foods store located at 95 East Houston Street in New York, New York are similarly situated in that they were all subject to the same plan and/or policy of Defendants to not pay their employees proper overtime rates for hours worked in excess of 40 per week or pay employees the proper rate of pay for night hours worked.

**The Gainsharing Program**

45.     In addition to paying employee wages, Whole Foods has a policy of issuing monthly bonuses to its employees based on store sales, productivity, and customer service, as measured by store and team performance (the "Gainsharing" program).

46.     Plaintiff Espinosa did not receive his Gainsharing funds for the last month he was employed by Whole Foods.

47.     Upon information and belief, Plaintiffs did not receive the proper

-8-

Gainsharing funds during the period in which Renna was Store Team Leader.

48.    Upon information and belief, other employees of Defendants have not received all of the Gainsharing funds to which they were entitled during the period in which Renna was Store Team Leader.

49.    Upon information and belief, the amount of Gainsharing funds that \Plaintiffs and Defendants' other employees in the Whole Foods Store on 95 East Houston Street decreased dramatically during the period in which Defendant Renna was Store Team Leader of that location.

50.    Upon information and belief, the failure to pay Plaintiffs and Defendants' other employees in the 95 East Houston Street store their Gainsharing funds was not due to any loss in store profits.

### Facts Regarding the Retaliatory Termination of Plaintiff Espinosa by Defendants

51.    Plaintiff Espinosa complained to Defendant Renna several times in September and October of 2010 about not being paid proper overtime and night wages, but Defendant Renna did not rectify the pay deficiencies.

52.    On or about November 11, 2010, Plaintiff Espinosa was on a scheduled break and went into the Whole Foods kitchen to greet a friend by the name of Junior. Defendant Renna also entered the kitchen at that time and observed Plaintiff Espinosa standing several feet from a plate of food that had been left on the counter by someone else.

53.    Whole Foods has a product sampling policy that prohibits employees from eating store food except for small samples available to customers.

54.    Renna confronted Plaintiff Espinosa about the plate of food, but Plaintiff

Espinosa denied that it was his. Defendant Renna sent Plaintiff Espinosa home because of this incident. Plaintiff Espinosa's friend Junior witnessed this incident.

55.  Upon information and belief, Defendant Renna was not scheduled to work the overnight shift on November 11, 2010, but was nevertheless working during the overnight hours.

56.  It is the policy of Whole Foods, according to the employee handbook, for Team Leaders and Store Team Leaders to make a reasonable effort to resolve any employee problems related to work performance through dialogue, corrective action or the informal dispute resolution process.

57.  Plaintiff Espinosa was summarily fired on November 12, 2010 by Defendant Renna on the telephone the day after Renna sent Plaintiff home for allegedly violating the Whole Food's sampling policy.

58.  Plaintiff Espinosa's termination by Defendant Renna was in retaliation for Plaintiff Espinosa's complaints about not being paid proper night wages and proper overtime wages.

59.  Following his termination, Plaintiff Espinosa sent a letter and a Fair Hearing Request via certified mail on November 19, 2010 to the North East Regional Office of Whole Foods detailing his termination and requesting a review of his termination.

60.  Although Plaintiff Espinosa has a copy of the certified mail receipt indicating that his letter and Fair Hearing Request form were received, Plaintiff Espinosa has yet to receive a response from Whole Foods.

*Facts Regarding the Retaliatory Termination of Plaintiff Santana by Defendants*

61.     For several months in the beginning of 2011, Plaintiff Santana made numerous attempts to transfer from the Grocery Team to other teams at Whole Foods.

62.     In order to be granted a transfer, Plaintiff Santana spoke with the Team Leaders of other Teams and complained to them that he wanted to switch teams because the Grocery Team leadership often refused to grant days off even though employees earn paid time off and are entitled to this time off, as detailed in the employee handbook.

63.     Despite his multiple attempts at transferring, Plaintiff Santana's requests were never granted.

64.     Plaintiff therefore continued to work as a Grocery Service Team Member.

65.     On or about September 29, 2011, Plaintiff Santana arrived to work on time at his scheduled time.

66.     Approximately one and one half hours into Plaintiff Santana's shift, he was approached by Defendant Alfieri, who asked Plaintiff Santana to accompany him into his office.

67.     Once in Defendant Alfieri's office, Defendant Alfieri informed Plaintiff Santana that he was being fired for excessive tardiness.

68.     Whole Foods has a tardiness policy that prohibits employees from excessive tardiness. As discussed in the Whole Foods Northeast Region Handbook, excessive tardiness is 3 late arrivals in 3 months, 5 late arrivals in 6 months, or 10 late arrivals in 12 months.

69.     Prior to September 29, 2011, Plaintiff Santana had not received a warning regarding tardiness since March 2011, nor did he have any combination of late arrivals as

discussed above.

70.     Plaintiff Santana was fired without warning for purported excessive tardiness despite not having received any warnings for tardiness in over 6 months.

71.     Plaintiff Santana was fired for complaining about the Grocery Team leadership's policy not to grant time off.

72.     Plaintiff Santana was never paid for the accrued vacation time he earned while working for Defendants.

73.     Following his termination, Plaintiff Santana sent several emails to Christina Minardi, the Regional President of the Northeast Region of Whole Foods asking for reinstatement, but Ms. Minardi informed Plaintiff Santana that he was not eligible for reinstatement due to his tardiness at work.

74.     Plaintiff Santana has also been in contact post-employment with Sue Poskus, Team Member Services Coordinator for the Northeast Region of Whole Foods. Ms. Poskus informed Plaintiff Santana that she would investigate his situation, but Plaintiff Santana has yet to learn of the results of said investigation.

## COLLECTIVE ACTION ALLEGATIONS

75.     Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Whole Foods but did not receive the compensation required by the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq., including 29 C.F.R. § 552.6, in respect to their work for Whole Foods.

76.     Upon information and belief, this class of persons consists of not less than 500 persons.

77.     There are questions of law and fact common to the class specifically whether the employment of the Plaintiffs by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq. Only the amount of individual damages sustained by each class member will vary.

78.     Plaintiffs and other employees are similarly situated insofar as the Defendants instituted a policy to ensure that they were not paid proper regular and overtime wages under the FLSA.

79.     Plaintiffs bring the fourth claim for relief herein on behalf of themselves individually and all persons similarly situated as a collective action pursuant to the FLSA, in respect to all claims that Plaintiffs and all persons similarly situated have against all Defendants as a result of all Defendants' violations under the FLSA and the federal wage orders codified in 29 C.F.R. § 552 et. seq.

## CLASS ALLEGATIONS UNDER NEW YORK LAW REGARDING FAILURE TO PAY WAGES

80.     Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Whole Foods but did not receive the compensation required by New York Labor Law, the common law of the State of New York and the state wage orders codified in 12 N.Y.C.R.R. §§ 137-143 in respect to their work for Defendants.

81.     Upon information and belief, this class of persons consists of not less than 500 persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

82.     There are questions of law and fact common to the class which

predominate over any questions affecting only individual members, specifically: whether the employment of the Plaintiffs by Whole Foods is subject to the jurisdiction and the wage and overtime requirements of the New York Labor Law, the common law of New York and the state wage orders codified in 12 N.Y.C.R.R. §§ 137-143. Only the amount of individual damages sustained by each class member will vary.

83.     The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

84.     Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

85.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

86.     Plaintiffs bring the first through third claims, fifth, sixth and ninth claims for relief herein on behalf of themselves individually and all persons similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23, in respect to all claims that Plaintiffs and all persons similarly situated have against all Defendants as a result of all Defendants' violations under the New York Labor Law and the common law of the State of New York, the state wage orders codified in 12 N.Y.C.R.R. §§ 137-143.

## CLASS ALLEGATIONS REGARDING FAILURE TO PAY GAINSHARING FUNDS

87.     Plaintiffs bring this action on behalf of themselves and all other persons

who were or are employed by Whole Foods but did not receive the Gainsharing funds they were entitled to under their respective employment agreements.

88.     Upon information and belief, this class of persons consists of not less than 500 persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

89.     There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of the Plaintiffs by Whole Foods is subject to the jurisdiction and the wage and overtime requirements of the New York Labor Law, the common law of New York and the state wage orders codified in 12 N.Y.C.R.R. §§ 137-143. Only the amount of individual damages sustained by each class member will vary.

90.     The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

91.     Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

92.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

93.     Plaintiffs bring the first through third claims, fifth, sixth and ninth claims for relief herein on behalf of themselves individually and all persons similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23, in respect to all claims that

Plaintiffs and all persons similarly situated have against all Defendants as a result of all

Defendants' violations under the New York Labor Law and the common law of the State of

New York, the state wage orders codified in 12 N.Y.C.R.R. §§ 137-143.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against the Corporate Defendant)

94.     Plaintiffs repeat and reallege each and every allegation as previously set

forth.

95.     Plaintiffs and others similarly situated agreed to perform work and services

for the Corporate Defendant.

96.     Plaintiffs and others similarly situated entered into oral contracts to perform

work for Defendants, whereby Plaintiffs would provide services as a Grocery Service Team

Members for compensation in the form of a specific hourly wage for all hours worked.

97.     These oral contracts called for Plaintiffs and others similarly situated to be

paid a specific hourly wage for all hours worked in exchange for working a specified

number of hours.

98.     Plaintiffs and others similarly situated satisfactorily supplied labor and

complied with the terms of their respective employment agreements with the Corporate

Defendant and were therefore entitled to wages rightfully earned while working for the

Corporate Defendant.

99.     The Defendants failed or refused to pay Plaintiffs and others similarly

situated proper overtime pay, the higher wages for the night hours they worked and to

which they were entitled to under their respective employment agreements, and the

Gainsharing profits to which they were also entitled.

100.     The Defendants' failure or refusal to pay Plaintiffs and others similarly situated wages to which they were entitled under their employment agreements with the Corporate Defendant constitutes a breach of Plaintiffs' and others similarly situated's employment agreement with the Corporate Defendant.

101.     That by virtue of the foregoing breach of contract by the Corporate Defendant, Plaintiffs and others similarly situated have been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs and others similarly situated should have been paid as contemplated by their employment agreements with the Corporate Defendant, less amounts actually paid to Plaintiffs and others similarly situated, together with an award of interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit against all Defendants)

102.     Plaintiffs repeat and reallege each and every allegation previously set forth.

103.     Plaintiffs and others similarly situated performed work and services for Defendants in good faith. In particular, Plaintiffs performed services as a Grocery Service Team Members.

104.     Defendants, by employing Plaintiffs and others similarly situated, voluntarily accepted Plaintiffs' and others similarly situated's services.

105.     Plaintiffs and others similarly situated had a reasonable expectation of payment for the hours they worked for Defendants, but Defendants failed to remunerate Plaintiffs and others similarly situated for all the hours they worked.

106.    Plaintiffs and others similarly situated were entitled to payment for the unpaid hours they worked for Defendants at a rate which constitutes the reasonable value of their services, less amounts actually paid to Plaintiffs and others similarly situated, together with an award of interest, costs, disbursements, and attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (New York Labor Law against all Defendants)

107.    Plaintiffs repeat and reallege each and every allegation previously made herein.

108.    Pursuant to New York Labor Law, Labor Law Articles 6 and 19, Labor Law § 198 and the Wage Orders issued under New York Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiffs and others similarly situated were entitled to certain hourly minimum wages, overtime wages, and other wages, all of which the Defendants intentionally failed to pay in violation of such laws.

109.    Wherefore Plaintiffs, on behalf of themselves and on behalf of others similarly situated seek a judgment against Defendants for all wages which should have been paid, but were not paid, to Plaintiffs and others similarly situated pursuant to New York Labor Law and the Wage Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs and others similarly situated, along with an award of attorneys' fees, interest and costs as provided under New York Labor Law and Labor Law § 198 and § 663.

## FOURTH CLAIM FOR RELIEF
### (FLSA against all Defendants)

110.    Plaintiffs repeat and reallege each and every allegation previously set forth.

111.    Plaintiffs bring this claim for relief on behalf of themselves and others similarly situated pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 552, Plaintiffs and others similarly situated were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty hours per week.

112.    Plaintiffs and others similarly situated worked more than forty (40) hours per week for Defendants, and Defendants willfully failed to make said minimum wage and/or overtime payments.

113.    Plaintiffs seek a judgment for unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to Plaintiffs, and Plaintiffs also seeks an award of liquidated damages, attorneys' fees, interest and costs as provided for by the FLSA.


## FIFTH CLAIM FOR RELIEF
### (New York Labor Law Retaliation by all Defendants against Plaintiff Espinosa)

114.    Plaintiffs repeat and reallege each and every allegation previously set forth.

115.    In or about October 2010 and on numerous occasions prior to his termination, Plaintiff complained to Defendant Renna that he was not being paid proper

wage rates for all hours worked.

116.    Despite these complaints, Plaintiff was not paid the proper wage rate for all night hours worked nor was he paid the proper overtime rate for hours worked in excess of 40 per week.

117.    In or about November 12, 2010, Defendant Renna terminated Plaintiff 's employment.

118.    In committing the above mentioned acts, the Defendants have discharged, penalized and discriminated against Plaintiff because Plaintiff made complaints to Defendants that Defendants had violated the provisions of the New York Labor Law, in violation of Section 215 of the New York Labor Law and the Plaintiff has been damaged therefrom.

119.    Plaintiff seeks, on this claim for relief, reinstatement to his former position, payment of lost compensation, damages and reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
### (FLSA Retaliation by all Defendants against Plaintiff Espinosa)

120.    Plaintiff repeats and realleges each and every allegation previously set forth.

121.    In or about October 2010 and on numerous occasions prior to his termination, Plaintiff complained to Defendant Renna that he was not being paid proper wage rates for all hours worked.

122.    Despite these complaints, Plaintiff was not paid the proper wage rate for all night hours worked.

123.    In or about November 12, 2010, Defendant Renna terminated Plaintiff 's

employment.

124.     In committing the above mentioned acts, the Defendants have discharged, penalized and discriminated against Plaintiff because Plaintiff made complaints to Defendants that Defendants had violated provisions of the FLSA in violation of FLSA §215 (a)(3) and Plaintiff has been damaged therefrom.

125.     Plaintiff seeks, on this claim for relief, reinstatement to his former position, payment of lost compensation, damages and reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### (New York Labor Law Retaliation by all Defendants against Plaintiff Santana)

126.     Plaintiffs repeat and reallege each and every allegation previously set forth.

127.     For several months in the beginning of 2011, Plaintiff Santana complained to Team Leaders in other Whole Foods departments that he wanted to switch teams because the Grocery Team leadership often refused to grant days off even though employees earn paid time off and are entitled to this time off, as detailed in the employee handbook.

128.     Despite his multiple attempts at transferring, Plaintiff Santana's requests were never granted.

129.     On or about September 29, 2011, Plaintiff Santana was terminated.

130.     Plaintiff Santana was never paid for the vacation time he accrued while working for Defendants.

131.     In committing the above mentioned acts, the Defendants have discharged, penalized and discriminated against Plaintiff because Plaintiff made complaints to Defendants that Defendants had violated the provisions of the New York Labor Law, in violation of

Section 215 of the New York Labor Law and the Plaintiff has been damaged therefrom.

132.    Plaintiff seeks, on this claim for relief, reinstatement to his former position, payment of lost compensation, damages and reasonable attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (FLSA Retaliation by all Defendants against Plaintiff Santana)

133.    Plaintiff repeats and realleges each and every allegation previously set forth.

134.    For several months in the beginning of 2011, Plaintiff Santana complained to Team Leaders in other Whole Foods departments that he wanted to switch teams because the Grocery Team leadership often refused to grant days off even though employees earn paid time off and are entitled to this time off, as detailed in the employee handbook.

135.    Despite his multiple attempts at transferring, Plaintiff Santana's requests were never granted.

136.    On or about September 29, 2011, Plaintiff Santana was terminated.

137.    Plaintiff seeks, on this claim for relief, reinstatement to his former position, payment of lost compensation, damages and reasonable attorneys' fees and costs.

## NINTH CLAIM FOR RELIEF
### (Accounting by Defendants for Gainsharing Program)

138    Plaintiffs repeat and reallege each and every allegation previously set forth.

139.    Whole Foods has a policy of issuing monthly bonuses to its employees measured by store sales, productivity and customer service and based on store and team performance ("Gainsharing program").

140.    The Gainsharing program called for Plaintiffs and others similarly situated to be paid a portion of their store's profits.

141.    Plaintiffs and others similarly situated relied upon the store's management to accurately calculate Gainsharing profits and distribute employee shares monthly.

142.    Because the terms of the Gainsharing program were set by the Defendants and the funds were handled by Defendants before being distributed to Plaintiffs and others similarly situated, a fiduciary relationship was created between Defendants and Plaintiffs and others similarly situated.

143.    Plaintiffs and others similarly situated satisfactorily supplied labor and complied with the terms of their respective employment agreements with the Corporate Defendant and were therefore entitled to Gainsharing profits rightfully earned while working for the Corporate Defendant.

144.    The Defendants failed or refused to pay Plaintiffs and others similarly situated their share of the profits of the Gainsharing program to which they were entitled to under their respective employment agreements.

145.    The Defendants' failure or refusal to pay Plaintiffs and others similarly situated profits from the Gainsharing program to which they were entitled under their employment agreements with the Corporate Defendant constitutes a breach of Defendants' fiduciary duty to its employees and a breach of Plaintiffs' and others similarly situated's employment agreements with the Corporate Defendant.

146.    Due to the manner in which Gainsharing profits are calculated, an accounting is the only manner in which Plaintiffs and others similarly situated  may ascertain the

Gainsharing profits owed to them.

147.     By reason of the foregoing, Plaintiffs are entitled to:

    (a)  an account to be taken of the Gainsharing program for the Whole Foods store located at 95 East Houston Street, New York, New York 10002;

    (b)  for Defendants to be compelled to turn and pay over to Plaintiffs all Gainsharing profits belonging to Plaintiffs; and

    ( c)  for a judgment and balance that may be due Plaintiffs therefor.

[no further text on this page]

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against Defendants as follows:

1.    Compensatory damages in an amount to be determined at trial;

2.    Liquidated damages pursuant to FLSA and New York Labor Law;

3.    Plaintiffs' costs and reasonable attorney's fees;

4.    Reinstatement to Plaintiffs' former positions;  and

5.     Pre-judgment interest.

       Together with such other and further relief that the Court deems just.

Dated: New York, NY
       December 30, 2011

                              ROBERT WISNIEWSKI P.C.

                              By: _____
                                   Robert Wisniewski (RW-5308)
                              Attorneys for Plaintiffs
                              225 Broadway, Suite 1020
                              New York, New York  10007
                              (212) 267-2101

-25-

EXHIBIT 1

ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI, P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RAMON ESPINOZA on behalf of
himself and all others similarly situated,

                                                        Docket No.:

                                    Plaintiff,          **CONSENT TO SUE**

            -against-

WHOLE FOOD STORE

-------------------------------------------------------------------X
                                    Defendants,

        By my signature below, I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action under Section 216(b) of the FLSA and agree to act as a representative of others similarly situated and to make decisions on my behalf and on behalf of others similarly situated concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit.

Ramon ESPinosa
Print Name

    ON FILE
Address

    ON FILE
City, State, Zip Code

                                        ON FILE
                                    Sign Name

                                        ON FILE
                                    Telephone

                                    07-21-011
                                    Date

ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI, P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RAMON ESPINOZA and MAXINS SANTANA on behalf of
themselves and all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **Docket No.:** |
|  | **CONSENT TO SUE** |

-against-

WHOLE FOODS MARKET GROUP, INC. and
WILLIAM RENNA,

Defendants,
-----------------------------------------------------------------------X

By my signature below, I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action under Section 216(b) of the FLSA and agree to act as a representative of others similarly situated and to make decisions on my behalf and on behalf of others similarly situated concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit.

MAXINS A. SANTANA
Print Name

**ON FILE**

**ON FILE**

_____ ON FILE
City, State, Zip Code

**ON FILE**
Sign Name

**ON FILE   ON FILE**

Telephone

12/13/11
Date